UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAYVELL-JONES WASHINGTON,<br>    Plaintiff, | : | CIVIL CASE NO.<br>3:19cv1022(JCH) |
| | : | |
| v. | : | |
| | : | |
| OFFICER JOHN DOE I, ET AL.,<br>    Defendants. | : | JULY 8, 2022 |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 52)**

**I.     INTRODUCTION**

The plaintiff, Jayvell-Jones Washington ("Washington"), is currently confined at Cheshire Correctional Institution as a sentenced prisoner.[1] However, he initiated this civil rights action while awaiting trial on charges which resulted in the sentence which he is currently serving. See Compl. (Doc. No. 1). In this case, Washington alleged multiple claims against multiple defendants. See id.; see also Am. Compl. (Doc. No. 15); see also, Second Am. Compl. (Doc. No. 17). At this stage in the litigation, however, only two First Amendment retaliation claims remain, each pertaining to defendant Lieutenant Seth LaPrey. See Ruling on Second Am. Compl. (Doc. No. 19); see also Ct. Order (Doc. No. 43).

The first claim relates to LaPrey's alleged reading of Washington's personal documents on March 26, 2019. The second relates to LaPrey's alleged reading and

---

[1] Information regarding Washington's confinement status may be found on the Department of Correction website under Inmate Search using his CT Inmate Number 249323. See http://www.ctinmateinfo.state.ct.us/ (last visited on June 29, 2022).

confiscation of Washington's personal documents during a search of Washington's cell on April 10, 2019.  See Second Am. Compl.

LaPrey has moved for summary judgment on Washington's two remaining claims.  See Def.'s Mot. for Summ. J. (Doc. No. 52).  In the Memorandum in Support of his Motion, LaPrey advances two arguments in support of summary judgment.  First, LaPrey contends that Washington has failed to exhaust his available administrative remedies prior to commencing this action.  Second, LaPrey contends that Washington's claims are barred by his qualified immunity.  See Def.'s Mem. of Law in Supp. of Mot. for Summ. J. (Doc. No. 53).  For the reasons that follow, LaPrey's Motion for Summary Judgment will be granted.

## II.     LEGAL STANDARD

A motion for summary judgment may be granted only if "there is no genuine dispute as to any material fact and [the moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ."  Giordano v. Market Am., Inc., 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine dispute as to any issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must

set forth specific facts showing that there is a genuine issue for trial.  <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  <u>Robinson v. Concentra Health Servs.</u>, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks and citation omitted).

This court is required to read a self-represented party's papers liberally and interpret them "to raise the strongest arguments they suggest", <u>Willey v. Kirkpatrick</u>, 801 F.3d 51, 62 (2d Cir. 2015).  However, "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment.  <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000).

**III.   FACTS**

Facts noted within this Order are largely taken from the LaPrey's Local Rule 56(a)(1) Statement (Doc. No. 52-1) and the exhibits and attachments which evidentiarily support his Local Rule 56(a)(1) Statement (Doc. Nos. 52-1 to 52-15).  While Washington has filed a Notice of Opposition to Defendant's Motion for Summary Judgment, this filing does not directly respond to each paragraph of LaPrey's Local Rule 56(a)(1) Statement.  <u>See</u> Pl's Obj. to Summ. J.  Statements of fact included within Washington's Notice of Opposition, as they pertain to LaPrey's qualified immunity claims, are not supported by affidavit or otherwise admissible evidence.  <u>See</u> Pl's Obj. to Summ. J.  Because LaPrey notified Washington of his obligation to properly respond to his Motion for Summary Judgment, <u>see</u> Notice to Self-Represented Litigant (Doc. No. 52-2), Washington's Notice of Opposition to Summary Judgment is construed as a

memorandum of legal argument rather than a Local Rule 56(a)(2) Statement.  See Local Rule 56(a)(2).

The facts asserted in LaPrey's Local Rule 56(a)(1) Statement, as they pertain to qualified immunity, are deemed admitted to the extent that they are supported by evidence.  See Local Rule 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule. . .").  Washington's Notice of Opposition to Summary Judgment does include an affidavit in which he makes assertions of fact pertaining to LaPrey's claim that he failed to exhaust administrative remedies.  See Pl's Obj. to Summ. J. at 20-23 (Doc. No. 56).  This court will consider these affidavit statements to the extent that they are based on Washington's personal knowledge.

From January 31, 2019, to May 15, 2019, Washington was detained at Northern Correctional Institution.  Def's L.R.(a)(1), Ex. B, ¶ 16.  At this same time, LaPrey was employed at Northern Correctional Institution as an intelligence officer.  Def's L.R.(a)(1), Ex. A, ¶ 6.  As an intelligence officer, LaPrey was assigned to monitor outgoing inmate mail.  Id. ¶ 7.

While reviewing outgoing inmate mail in March of 2019, Officer LaPrey came across a letter dispatched by Washington which bore "indica" of the "Sovereign Citizen" movement.[2]  Id. ¶ 10.  Because the "Sovereign Citizen" movement has been designated

---

[2] The perceived "indicia" of the Sovereign Citizen movement appears to have been derived from unusual phrasing which Washington used as a return address on the envelope of his letter.  Def's L.R.(a)(1), Ex. A, ¶¶ 11-12.

as a "Disruptive Group" by the State of Connecticut Department of Correction, any documents endorsing Sovereign Citizen ideology constitute "contraband" within the meaning of Connecticut Department of Correction directives. Id. ¶¶ 14, 31; Def's L.R.(a)(1), Attach. 6 (Doc. No. 52-10). For this reason, LaPrey decided to search Washington's cell for additional "Sovereign Citizen" documents. Def's L.R.(a)(1), Ex. A, ¶ 24. Presumably, this search occurred on the March 26, 2019, date alleged in Washington's Second Amended Complaint. Second Am. Compl.at p. 21. According to LaPrey, he was unaware that Washington had filed grievances against his fellow correctional officers prior to the March 26, 2019 search of Washington's cell. Id. ¶ 35.

LaPrey concedes that he examined documents discovered in Washington's cell as part of his March 26, 2019, search. Id. ¶ 24. This document review led LaPrey to conclude that Washington did not currently have any "Sovereign Citizen" contraband within his cell. Id. ¶ 25.

On April 10, 2019, LaPrey again searched Washington's cell, this time as part of a broader facility shakedown. Id. ¶ 27. This latter search uncovered 42 pages of documents identifying with the Sovereign Citizen movement. Id. ¶¶ 28, 32-33. Viewing these documents as contraband, LaPrey confiscated them, and then forwarded them to the Department of Correction Intelligence Unit. Id. ¶¶ 30, 33-34. At the time he seized Washington's documents, LaPrey purports to have been completely unmotivated by Washington's prior filing of grievances. Id. ¶¶ 35, 38-39.

## IV.   DISCUSSION

LaPrey raises two arguments in support of his Motion for Summary Judgment. First, he contends that Washington has failed to exhaust his available administrative

5

remedies.  Second, he contends that Washington's claims are barred by qualified immunity.

      A.      <u>Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." <u>Id.</u>  The Supreme Court has held that this provision requires an inmate to exhaust his or her administrative remedies before filing any type of action in federal court, see <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002), regardless as to whether the inmate may ultimately obtain the specific relief he desires through the available administrative process.  See <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).  Furthermore, the PLRA requires "proper exhaustion", which entails compliance with all "procedural rules", such as filing deadlines, as defined by a particular prison grievance system.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 90-91 (2006).

Relevant to this case, the Connecticut Department of Correction requires inmates to adjudicate grievances pertaining to conditions of their confinement in accordance with its Administrative Directive 9.6.  Following this directive, an aggrieved inmate must first seek informal resolution with an appropriate correctional facility staff member.  This informal resolution requires initial verbal consultation.  If verbal consultation fails, an inmate must then submit an Inmate Request Form clearly stating the nature of his or her problem and any remedy sought.  This request is termed a "grievance."  If a "grievance" is denied or rejected, an inmate may subsequently pursue an administrative "Level 2"

6

appeal.  In limited circumstances, a subsequent "Level 3" appeal is permitted following an adverse ruling on a Level 2 appeal.  See Def's L.R.(a)(1), Attch. 1 (Doc No. 52-5).

The facts asserted in LaPrey's Local Rule 56(a)(1) Statement support his contention that Washington failed to exhaust his administrative remedies.  From LaPrey's evidence, it appears that Washington did file a timely grievance related to LaPrey's March 26, 2019 reading of his personal documents (albeit without appropriately citing a date of occurrence).  Def's L.R.(a)(1), Ex. B, ¶¶ 19-20 (Doc. No. 52-4); Def's L.R.(a)(1), Attch. 4 (Doc. No. 52-8).  However, Washington did not administratively appeal the adverse adjudication of the grievance related to LaPrey's March 26, 2019 conduct, or file a separate grievance related to LaPrey's reading and confiscation of documents which occurred on April 10, 2019.  Def's L.R.(a)(1), Ex. B, ¶¶¶ 18-20 (Doc. No. 52-4); Def's L.R.(a)(1), Attch. 3 (Doc. No. 52-7).  Thus, based on the evidence provided by LaPrey, Washington does not appear to have fully pursued the administrative remedies made available to him through Administrative Directive 9.6.

Supplemental facts asserted by Washington in his Affidavit supporting his opposition to summary judgment complicate matters.  According to Washington, correctional officers did not notify him of the adverse ruling he received on his grievance related to LaPrey's March 26, 2019 conduct.  Additionally, Washington asserts that he did, in fact, provide correctional staff with a grievance related to LaPrey's alleged April 10, 2019 conduct, and then subsequently provided staff with Level 2 appeals from perceived non-adjudication of his grievances.  Essentially, Washington claims that prison staff did not: (1) provide him with notice of its adverse administrative ruling on his initial grievance; or (2) accept and/or appropriately forward, his subsequent grievances

and appeals.  See Pl's Obj. to Summ. J. at pp. 20-23 (Doc. No. 56).

The PLRA does not require a full exhaustion of administrative remedies when those remedies are not, as a practical matter, made available to an aggrieved inmate. Such unavailability may exist "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Ross v. Blake, 578 U.S. 632, 644 (2016).

A reasonable jury could find, based on Washington's testimony, that he was not notified of the adverse ruling on his grievance or that his subsequent grievances were not accepted.  It then could be reasonably argued that administrative remedies were not made available to him.  See Sandlin v. Poole, 575 F.Supp.2d 484, 488 (W.D.N.Y 2008) (concluding that defendants in a civil rights action would be estopped from arguing failure to exhaust remedies as an affirmative defense, if prison officials had refused to accept or forward the plaintiff's administrative appeals).

Thus, a material issue of fact needs to be resolved before this court can determine whether the PLRA bars Washington from pursuing his current claims against LaPrey.  Accordingly, LaPrey's Motion for Summary Judgment is not granted on the ground that Washington failed to properly exhaust his available administrative remedies.

       B.      Qualified Immunity

LaPrey also argues that he is entitled to qualified immunity.  Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (quoting Russo v. City of

Bridgeport, 479 F.3d 196, 211 (2d Cir. 2007)).  In evaluating the qualified immunity defense, this court focuses its analysis upon whether LaPrey's conduct violated clearly established law.

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015).  This court must "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  Dolan, 794 F.3d at 295 (quoting Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003)).

In allowing Washington's claims against LaPrey to move forward at the Initial Review stage, this court held that Washington plausibly alleged facts that satisfied all three elements of his First Amendment retaliation claim—protected speech, adverse action, and causal connection.  Ruling on Second Am. Compl. at 10-11 (Doc No. 19).  As to the first and second elements, Washington alleged he filed a grievance (a form of protected speech) and that Officer LaPrey read and confiscated his mail (an adverse action).  Id.  As to the third element, causation, this court determined that the proximity in time between the filing of Washington's grievances and LaPrey's adverse action permitted an inference that LaPrey read and confiscated Washington's mail in retaliation for his grievance filing so as to warrant "further development of the record."  Id. at 11.

Since this court last considered Washington's First Amendment retaliation claims, LaPrey has filed a 56(a)(1) Statement which provides additional factual context to this case.  LaPrey has explained that he, in his capacity as an intelligence officer, noticed evidence of Sovereign Citizen "contraband" on Washington's outgoing mail in March of 2019.  This, according to LaPrey, is what motivated his decision to read documents found within Washington's cell during the March 26, 2019 search.  With the additional information provided by LaPrey's uncontested 56(a)(1) Statement, the connection which Washington draws between his protected speech (the filing of grievances) and LaPrey's adverse action (the reading of his personal documents) becomes too speculative to survive summary judgment.  See Washington v. Afify, 681 Fed. App'x 43, 46 (2d Cir. 2017) (summary order) (holding that while temporal proximity between protected conduct and adverse action constitutes circumstantial evidence of retaliation, it is not typically, in and of itself, sufficient to warrant a trial on a retaliation claim); see also Faulk v. Fisher, 545 Fed, Appx. 56, 58 (2d Cir.2013) (summary order) (noting courts "have consistently required some . . . evidence of retaliatory animus [greater than temporal proximity alone] before permitting a prisoner to proceed to trial on a retaliation claim", and citing cases in which the Circuit required more than temporal proximity alone).

Washington's challenge to LaPrey's April 10, 2019 confiscation of documents is equally, if not more, untenable, given the current record.  As an intelligence officer, LaPrey was required to confiscate any contraband discovered within Washington's cell.  There is no current factual dispute that Washington's Sovereign Citizen paperwork constituted contraband.  Assuming that LaPrey was personally motivated by retaliatory

instinct when he confiscated contraband discovered within Washington's cell, the non-discretionary nature of his decision to confiscate that contraband would preclude Washington from establishing a causal connection between his constitutionally protected speech and LaPrey's adverse action.  See Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) (holding that defendant's improper motive is irrelevant if it did not actually inform a decision to take adverse action against a plaintiff).

Because Washington has no evidence beyond mere temporal proximity to reasonably support an inference of retaliation, no reasonable juror could conclude that LaPrey violated clearly established law when he read, and later confiscated, Washington's personal documents.  Accordingly, LaPrey is entitled to summary judgment on the ground that Washington's claims are barred by qualified immunity.

**V. CONCLUSION**

The defendants' Motion for Summary Judgment (Doc. No. 52) is granted on the ground that LaPrey is entitled to qualified immunity.  The Clerk is directed to enter judgment for the defendant and close the case.

SO ORDERED.

Dated at New Haven, Connecticut this 8th day of July, 2022.

                                        /s/ Janet C. Hall
                                 Janet C. Hall
                                 United States District Judge